UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADRIAN BOWRIN,<br><br>    Plaintiff,<br><br>  v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>    Defendant. | Civil Action No. 23-2421 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adrian Bowrin brought this action in Superior Court against two District of Columbia Metropolitan Police Department ("MPD") officers Michael Vaillancourt and Curt Sloan and the District of Columbia, alleging that Investigator Vaillancourt, with Officer Sloan's help, "jerked" plaintiff's arms behind his back, handcuffed him, and broke his arm, in violation of the Fourth Amendment and D.C. common law. *See* Notice of Removal, Ex. at 60–66 (Am. Compl.), ECF No. 1-1.[1] After denial by the Superior Court of the District of Columbia's motion for partial dismissal of plaintiff's negligence and negligent training claims, *see id.* at 115–116 (Aug. 2023 Super. Ct. Order), Investigator Vaillancourt removed the case to this Court and now moves to dismiss the claims against him for battery, use of excessive force, and negligence, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. to Dismiss, ECF No. 5; Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem."), ECF No. 5-1; Pl.'s Opp'n Mot. to Dismiss

---

[1]   Most documents filed in Superior Court before removal, including the case-initiating complaint, the Amended Complaint, the District of Columbia's partial motions to dismiss, and the Superior Court's two orders denying these motions, are attached as a single exhibit to the Notice of Removal and without their original pagination. *See* Notice of Removal, Ex., ECF No. 1-1. For ease, all references to these documents will cite to the exhibit to the Notice of Removal and reflect the pagination generated automatically by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

1

("Pl.'s Opp'n"), ECF No. 10; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 12. For the reasons below, the motion is denied.

## I.    BACKGROUND

At approximately 6:34 a.m. on August 3, 2022, just as plaintiff was waking up, MPD officers knocked loudly on the door of his home in Washington, D.C., to execute a search warrant in connection with an alleged offense committed by plaintiff's son.  *See* Notice of Removal, Ex. at 61 (Am. Compl.).  When plaintiff opened the door, Investigator Vaillancourt, with Officer Sloan's assistance, "jerked" plaintiff's arms behind his back and handcuffed him. *Id.*  Plaintiff did not resist and experienced "sudden and extreme pain" in his left elbow due to the officers applying "significant force and torque."  *Id.* at 61–62.  Plaintiff went to the Washington Hospital Center later that same day, where he was told he had a broken arm and to go to physical therapy "to attempt to restore the use of his arm." *Id.* at 62.  At this point, plaintiff has "reached the maximum medical improvement that his providers can expect" and yet "is left with permanent loss of function and pain" in his arm. *Id.*

On November 30, 2022, plaintiff brought this four-count action, in D.C. Superior Court, against Officer John Doe and the District of Columbia.  *See Bowrin v. District of Columbia*, 2022-CAB-5551 (D.C. Super. Ct.); Notice of Removal, Ex. at 5–10 (Compl.).  Specifically, plaintiff alleged claims of negligence (Count I) and battery (Count II) against Officer Doe and the District of Columbia; one claim of negligent training against the District of Columbia (Count III); and one Fourth Amendment excessive force claim, pursuant to 42 U.S.C. § 1983, against Officer Doe (Count IV).  *Id.* at 7–10.  On March 3, 2023, the District of Columbia moved for partial dismissal of plaintiff's complaint, arguing that plaintiff's negligence claim (Count I) mirrors his battery claim (Count II), thereby warranting dismissal according to *District of*

*Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003), and that plaintiff's negligent training claim (Count III) is improperly pled. *See id.* at 35 (D.C. Partial Mot. to Dismiss).

While the District of Columbia's motion was pending, plaintiff moved for leave to file an amended complaint to fix several typographical errors and to name, as defendants, Investigator Vaillancourt and Officer Sloan. *See id.* at 55–56 (Pl.'s Mot. to Amend). The District of Columbia took no position on the motion, and the motion was granted on June 16, 2023. As amended, the complaint alleges the same four counts: negligence (Count I) and battery (Count II) against all three defendants; negligent training against the District of Columbia (Count III); and a Fourth Amendment excessive force claim, pursuant to 42 U.S.C. § 1983, against Investigator Vaillancourt and Officer Sloan (Count IV). *Id.* at 62–65 (Am. Compl.). Plaintiff seeks $5,000,000 in compensatory damages for pain and suffering, medical expenses, and loss of wages. *Id.* (Wherefore Clause). The District of Columbia again moved, on June 27, 2023, for partial dismissal of plaintiff's Amended Complaint, on substantially the same grounds as its partial motion to dismiss the complaint.

On June 28, 2023, the Superior Court denied the District of Columbia's March 3, 2023 partial motion to dismiss plaintiff's complaint. *See id.* at 80–85 (June 2023 Super. Ct. Order). In relevant part, the court explained that the negligence count is "separately ple[d] from the count of battery" and contains facts alleging that an MPD officer, "upon opening plaintiff's door, immediately jerked plaintiff's arms behind his back in a violent manner, and in doing so, failed to exercise reasonable care in detaining plaintiff," "caus[ing] plaintiff's arm to be broken." *Id.* at 82–83. Plaintiff further alleges that the MPD officer was "acting within the scope of his employment, thereby making the District vicarious liable for the alleged negligence." *Id.* at 83. The negligence claim against the District of Columbia was thus allowed to proceed.

On August 11, 2023, the Superior Court denied the District of Columbia's June 27, 2023 partial motion to dismiss plaintiff's Amended Complaint, explaining that the Amended Complaint and corresponding partial motion to dismiss neither "raise[d] any new claims" nor "differ[ed] substantively" from the case-initiating complaint and corresponding partial motion to dismiss. *See id.* at 115–116 (Aug. 2023 Super. Ct. Order). Since "[t]he contentions raised by the District of Columbia in the original motion to dismiss," which are "substantively the same as the contentions raised in the instant motion," were "fully addressed by the Court's June 28 order denying the partial motion to dismiss," the court again denied the District of Columbia's partial motion to dismiss. *Id.*

Investigator Vaillancourt, with the District of Columbia's consent, removed the case, pursuant to 28 U.S.C. § 1441, to this Court on August 18, 2023, and timely moved to dismiss the claims against him for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible when the plaintiff pleads facts that are more than "merely consistent with a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] Also pending is plaintiff's motion for expedited discovery, seeking an order directing the District of Columbia to respond, before the parties have conferred as required by Federal Rule of Civil Procedure 26(f), to the one question in his Second Set of Interrogatories inquiring about the last known address of MPD Officer Curt Sloan, who is retired and for whom MPD will not accept service and, consequently, who has not yet been served. *See* Pl.'s Mot. to Expedite Disc. & for Extension of Time for Service, ECF No. 8; *see also* Def.'s Opp'n to Pl.'s Mot. to Expedite Disc. & for Extension of Time for Service, Ex. B, ECF No. 11-2. This opposed motion is resolved by separate order.

alleged." *Id.* (citation omitted); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)). "[A] complaint survives a motion to dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (alterations in original accepted and citation omitted).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022). A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

### B. Section 1983 and Qualified Immunity

Section 1983 provides a remedy for an individual who has been deprived, by a person acting under color of state law, of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In suits brought under

Section 1983, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). In determining whether a government official should be entitled to qualified immunity, the two pertinent questions are (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). To be "clearly established," a legal principle must be "'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *al-Kidd*, 563 U.S. at 741–42). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

### III.   DISCUSSION

The Amended Complaint alleges three counts against Investigator Vaillancourt: negligence (Count I) and battery (Count II) under D.C. common law, and use of excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983 (Count IV). Investigator Vaillancourt moves to dismiss all three counts, arguing that qualified immunity and qualified privilege bar the excessive force and battery claims respectively, and, in an argument that mirrors

the District of Columbia's, that *District of Columbia v. Chinn*, bars the negligence claim as duplicative of the battery claim. The arguments are addressed *seriatim*.

### A. Excessive Force (Count IV) and Battery (Count II)

When assessing a claim of excessive force under the Fourth Amendment, "courts ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Lombardo v. City of St. Louis, Mo.*, 141 S. Ct. 2239, 2241 (2021) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). This standard cannot be applied "mechanically" and "requires careful attention to the facts and circumstances of each particular case," including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citations omitted).

"Even if there is a genuine dispute about the reasonableness of an officer's use of force, he is protected by qualified immunity unless his force violated clearly established law." *Hedgpeth v. Rahim*, 893 F.3d 802, 809 (D.C. Cir. 2018). Qualified immunity "must be evaluated using the same 'objective reasonableness' criteria" with which courts "scrutinize an officer's actions under the [F]ourth [A]mendment," *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993), and the "pertinent question" is "whether any competent officer, in light of precedent involving similar facts" would consider it unlawful to handcuff someone, who was not carrying a weapon, not charged with a crime, or not otherwise a security or flight risk, with so much "force and torque" that his arm broke, *Hedgpeth*, 893 F.3d at 809 (alteration in original accepted and citation omitted). An objectively unreasonable use of force is a clearly established constitutional violation. *See Johnson v. District of Columbia*, 528 F.3d 969, 975–76 (D.C. Cir. 2008)

(explaining that if defendant's "use of force survives this test of objective legal reasonableness, then he is entitled to qualified immunity" (citation omitted)).

The "parallel common-law claims" to a Fourth Amendment excessive force claim are assault and battery. *Tinius v. Choi*, 77 F.4th 691, 706 (D.C. Cir. 2023). Common-law battery, at issue here, turns on whether an officer engaged in "an intentional act that causes a harmful or offensive bodily contact." *Id.* (quoting *Smith v. District of Columbia*, 882 A.2d 778, 787 (D.C. 2005)). Like federal law, D.C. law grants police officers "a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the officer reasonably believes to be necessary.'" *Id.* (alteration in original accepted) (quoting *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009)). "[T]he test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation." *Scales*, 973 A.2d at 730. The objective prong is "similar to the excessive force standard applied in the Section 1983 context." *Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998); *see also Harris v. Dep't of Veterans Affs.*, 776 F.3d 907, 913 (D.C. Cir. 2015) (relying on case law concerning qualified immunity to analyze qualified privilege).[3]

Investigator Vaillancourt argues that his conduct was not objectively unreasonable because he was merely handcuffing plaintiff, which is "a type of force that a police officer is authorized to use." Def.'s Mem. at 6 (citing *Muehler v. Mena*, 544 U.S. 93 (2005)). He

---

[3] Although federal qualified immunity and state-law qualified privilege are not identical, *see Kelly v. Gaton*, No. 21-7138, 2023 WL 552093, at *2 n.2 (D.C. Cir. Jan. 27, 2023), any differences do not appear to be implicated here, where the analysis turns on whether, taking the facts in the Amended Complaint as true, defendant's actions were objectively reasonable, and the parties have analyzed both qualified immunity and privilege together, *see, e.g.*, Def.'s Mem. at 6–7; Pl.'s Opp'n at 14–15.

contends that plaintiff "has not alleged facts showing that Investigator Vaillancourt used more force than was reasonably necessary under the circumstances" because plaintiff does not allege that "any force continued after he was placed in handcuffs," or that "he notified Investigator Vaillancourt that he was experiencing pain while being handcuffed yet his pleas were ignored." *Id.* The fact that plaintiff's "arm was allegedly broken," Investigator Vaillancourt contends, is insufficient. *Id.* at 6–7.

Investigator Vaillancourt oversimplifies plaintiff's claim, which alleges not that the act of handcuffing was unreasonable, but that the force with which plaintiff was handcuffed was excessive. Plaintiff alleges that he opened the door to his home, and that Investigator Vaillancourt, without suspicion of danger or provocation, "[i]mmediately" "jerked [plaintiff's] arms behind his back" and handcuffed him. Notice of Removal, Ex. at 61 (Am. Compl.). He further alleges that, although he never resisted, Investigator Vaillancourt "applied significant force and torque to [plaintiff's] left arm, causing [plaintiff] to experience sudden and extreme pain radiating from his left elbow," and that he was ultimately diagnosed with a broken arm and is "left with permanent loss of function and pain." *Id.* at 61–62. To be sure, MPD officers were at plaintiff's home to execute a search warrant, but the Amended Complaint alleges that the warrant was "in connection with an alleged offense by [plaintiff's] son" and does not allege that the officers mistook plaintiff as his son, that they had reason to suspect plaintiff of wrongdoing, or that the underlying offense was a violent or dangerous crime. *Id.* at 61.

Put differently, as alleged by plaintiff, each factor cuts in plaintiff's favor: The amount of force was greater than the need for the use of force; plaintiff's injury (a broken arm) was significant; Investigator Vaillancourt made no effort to limit the amount of force; no evidence of a threat, security risk, safety problem, or need to subdue plaintiff is alleged; and plaintiff was not

actively resisting. *Compare id.*, *with Muehler*, 544 U.S. at 95–96 (explaining that a SWAT team secured the residence and grounds before execution of a search warrant because the suspect living in the home was "armed and dangerous" and was believed to have "recently been involved in [a] driveby shooting"), *and Lin v. District of Columbia*, No. 20-7111, 2022 WL 4007900, at *13 (D.C. Cir. Sept. 2, 2022) (concluding that use of force was reasonable, in part, because of the "elevated" "severity of the security problem" due to the officers' belief that plaintiff had just "physically assaulted" another individual).[4]

"It is hornbook law that, on a motion to dismiss, the court must accept as true the well-pleaded factual allegations in the complaint, and confine its consideration to those allegations." *Doe v. Siddig*, 810 F. Supp. 2d 127, 132 (D.D.C. 2011). Taking the alleged facts in the Amended Complaint as true, Investigator Vaillancourt's conduct was not objectively reasonable, and plaintiff's excessive force and battery claims survive his motion to dismiss.

### B. Negligence (Count I)

To state a claim for negligence under D.C. law, a plaintiff must prove "the applicable standard of care, a deviation from that standard of care by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Chinn*, 839 A.2d at 706 (citation omitted). Although "[a]n individual who has been injured by a District police officer may sue under one or more common law theories of legal liability such as assault and battery or negligence," battery, which is an intentional tort, and negligence are "regarded as mutually exclusive grounds for liability": "there is no such thing as a negligent battery." *Id.* at 705–06 (citation omitted).

---

[4] Defendant Investigator Vaillancourt cites two cases to support his position that his use of force was not excessive, but both cases were decided at the summary judgment stage, where a more fulsome factual record was available. Def.'s Mem. at 6–7 (citing *Cooper v. District of Columbia*, No. 19-cv-1449, 2021 WL 2894644 (D.D.C. July 9, 2021); *Goolsby v. District of Columbia*, 317 F. Supp. 3d 582, 595 (D.D.C. 2018)); *see also* Def.'s Reply at 2.

For "the events surrounding the application of excessive force [to] lend themselves to a theory of negligence as well," there must be "at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest, which may properly be analyzed and considered by the jury on its own terms apart from the intentional tort of battery." *Id.* at 707. Put differently, "in a case involving the intentional use of force by police officers," "negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." *Id.* at 711. "It is tautological to speak of the applicable standard of care as being the duty not to use excessive force." *Id.* "Merely using the term negligence does 'not raise a cognizable claim of negligence.'" *Harris*, 776 F.3d at 916 (quoting *Chinn*, 839 A.2d at 708).

At the outset, the parties dispute whether the law-of-the-case doctrine applies, in light of the Superior Court's rejection of the identical—almost verbatim—argument, when made by the District of Columbia in its partial motion to dismiss. *See* Notice of Removal, Ex. at 82–83 (June 2023 Super. Ct. Order); *see also* Pl.'s Opp'n at 5–7; Def.'s Reply at 3–4. The law-of-the-case doctrine refers to "the general concept that a court involved in later phases of a lawsuit should not re-open questions decided by that court or a higher one in earlier phases." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022) (alteration in original accepted) (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995)). "Colloquially speaking, the doctrine ensures that 'the same issue presented a second time in the same case in the same court should lead to the same result." *Id.* (quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999)). The doctrine is "not a binding rule," but "a principle that guides courts in the exercise of their discretion." *Id.*

11

Strictly speaking, the law-of-the-case doctrine may not be implicated here because a denial of a motion to dismiss is an interlocutory order that remains open for reconsideration. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1048 (D.C. Cir. 2017) ("[T]he law-of-the-case doctrine does not apply to interlocutory orders for they can always be reconsidered and modified by a district court prior to entry of a final judgment." (alteration in original accepted and citation omitted)); *see also Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (rejecting argument that a district court "reversing its previous denial of dismissal . . . without a change in facts or law . . . violated the law of the case doctrine"). Courts have nonetheless invoked the doctrine to follow decisions of prior interlocutory orders and by state courts prior to removal. *See, e.g.*, *PaineWebber Inc. v. Farnam*, 870 F.2d 1286, 1290–91 (7th Cir. 1989) (explaining that a federal court may invoke the doctrine to follow decisions issued by a state court prior to removal); *Harlow v. Children's Hosp.*, 432 F.3d 50, 55–56 (1st Cir. 2005) (rejecting per se rule that "law-of-the-case considerations in a removed case are never applicable" and explaining that "a state-court interlocutory order in a case removed to federal court" may be treated like "the order originated in federal court"); *Lillibask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (finding, based on the law-of-the-case doctrine, an administrative hearing officer's decision not to re-hear certain issues raised before another officer "understandabl[e]," "appropriate," and "well within the hearing officer's discretion"); *In re United Press Int'l*, 106 B.R. 323, 326 (D.D.C. 1989) (explaining that the Supreme Court of Hawaii's decision on actual malice "is the law of the case" and following the ruling, even though "this Court's independent review of the record might produce a different result"); *see also* 18B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 (3d ed. 2023).

While this Court's independent review may have produced a different outcome, the question whether plaintiff has adequately pled negligence, as separate and distinct from battery—a question of state law—has been decided by the Superior Court with respect to the District of Columbia, a co-defendant, on a nearly identical motion to dismiss. Indeed, the Superior Court's conclusion is reasonable. Most generously read, the Amended Complaint arguably alleges that Investigator Vaillancourt had a duty of care to apply handcuffs using the proper technique and breached that duty by applying "too much . . . torque to [plaintiff's] arm," thereby breaking his arm. Notice of Removal, Ex. at 62 (Am. Compl.); *see also* Pl.'s Opp'n at 9 ("Investigator Vaillancourt negligently failed to follow proper techniques and take proper care."). Read as such, whereas the battery claim involves an excessive force standard, the negligence claim involves a standard of care that requires police officers to use the proper technique, including the right amount of torque, when applying handcuffs. Plaintiff's negligence claim is thus based on a different "factual scenario" than his battery claim: the officer either intentionally used too much force when handcuffing plaintiff (battery), or recklessly believed that he used the proper technique when applying the handcuffs (negligence). *See Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 30 (D.D.C. 2011) (concluding that plaintiff's negligence claim was based on a different "factual scenario" because the officer "either intentionally applied the handcuffs tightly and deliberately failed to lock the handcuffs" (battery), or "he recklessly believed that he had properly applied the handcuffs" (negligence)).

Moreover, departing from the conclusion reached by the Superior Court would be particularly incongruous where co-defendants, represented by the same counsel, are alleged, under a single count, to be liable for the same conduct, and this Court's conclusion would apply to only one of the co-defendants. *See PNC Fin. Servs. Grp. v. Comm'r of Internal Revenue*

*Serv.*, 503 F.3d 119, 126 (D.C. Cir. 2007) ("Inconsistency is the antithesis of the rule of law." (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc))). In sum, although the Superior Court's decision is not binding, ensuring consistency in the disposition of co-defendants' motions to dismiss is a compelling reason to conform with the Superior Court's conclusion, and its conclusion that plaintiff, at the motion to dismiss stage, has adequately pled negligence as separate and distinct from battery is adopted here.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby:

**ORDERED** that defendant Investigator Vaillancourt's Motion to Dismiss, ECF No. 5, is **DENIED**; it is further

**ORDERED** that all parties who have appeared in this case, including plaintiff and defendants the District of Columbia and Investigator Vaillancourt, shall file, by January 11, 2024, a joint meet and confer statement. *See* Standing Order ¶ 4, ECF No. 4.

**SO ORDERED.**

Date:  December 28, 2023

_____
**BERYL A. HOWELL**
United States District Judge