**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADRIAN BOWRIN,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 23-2421 (BAH)** |
| **DISTRICT OF COLUMBIA,** *et al.,* | |
| *Defendants*. | |

**DEFENDANT DISTRICT OF COLUMBIA,
MICHAEL VAILLANCOURT, AND CURTIS SLOAN'S REPLY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants District of Columbia (the District), Investigator Michael Vaillancourt, and Retired Sergeant Curtis Sloan (together, Defendants) file their reply in support of their Motion for Summary Judgment, [40], under Fed. R. Civ. P. 56(c) as to each of Plaintiff Adrian Bowrin's claims. Summary judgment for Defendants is appropriate because: (1) there is no genuine dispute of material fact here, where body-worn camera (BWC) footage documented the incident in question from multiple angles; (2) Investigator Vaillancourt and Sergeant Sloan are entitled to qualified immunity as to Plaintiff's excessive force claim; (3) Plaintiff's battery claim is barred by qualified privilege; (4) Plaintiff failed to articulate a national standard of care that shows the District breached a duty owed to Plaintiff in support of his negligence and negligent training claims.

**ARGUMENT**

**I.**     **Plaintiff's Disputes to the Statement of Undisputed Material Facts Are Not Genuine.**

In his response to Defendants' Statement of Undisputed Material Facts (SUMF), [40-3], Plaintiff admitted, without qualification, SUMF ¶¶ 1, 3–4, 7, 11–12, 18, 20, 35–38, 41, 43, 49–50, 52, 57–58, and 60–61. Pl.'s Resp. SUMF [43-1]. Of the remainder, Plaintiff admitted with disputes as to purported omissions or implications of the facts provided:  SUMF ¶¶ 2, 5–6, 14, 16, 19, 21–32, 34, 40, 42, 44–48, 51, 53–55, and 59. *See id.* But in these, Plaintiff does not assert that a fact cannot be or is genuinely disputed, as required by or a statement that a fact is not supported by admissible evidence, as required by Fed. R. Civ. P. 56(c)(1) and (2). For example, some partially disputed facts demonstrate the subjective beliefs and experiences of Investigator Vaillancourt and Sergeant Sloan at the time of the incident. *See*, *e.g.*, SUMF ¶¶ 26–27, 29–32, 34, and 40. Plaintiff does not dispute the fact itself but simply argues the fact's meaning. *See* Pl.'s Resp. SUMF ¶¶ 26–27, 29–32, 34, and 40. This is not a genuine or material dispute.

Similarly, Plaintiff's dispute of SUMF ¶ 8 is not genuine, as the fact is supported by the BWC footage. Likewise, Plaintiff's dispute of SUMF ¶ 9 is not genuine; Plaintiff takes issue with the four second period in the BWC footage cited by Defendants, which clearly correlates to the action described in the fact at the time of the BWC footage. Plaintiff's contention concerning a later period does not genuinely counter this fact. As to SUMF ¶ 10, Plaintiff's dispute is rendered disingenuous by the video evidence to the contrary. And as to SUMF ¶ 13, Plaintiff's dispute as to Sergeant Sloan's own opinion is not genuine or material. Likewise, Plaintiff's dispute of SUMF ¶ 15 is not genuine, as he counter's the contents of Investigator Vaillancourt's testimony with citation to BWC footage, contending that the footage does not "clearly show

that." Pl.'s Response SUMF ¶ 15. A lack of clear *confirmation* by BWC footage of something supported by testimony does not *dispute* the testimony given.

Only SUMF ¶¶ 17, 33 and 39 are disputed in their entirety. Plaintiff's dispute to SUMF ¶ 17 is not genuine, as the SUMF quotes Investigator Vaillancourt's testimony. Plaintiff challenges the content of the testimony, and he does so by setting forth a supposed justification for Plaintiff's resistance *after* the alleged excessive use of force, rather than the discussion found in SUMF ¶ 17, which focuses on the events leading up to that use of force.

SUMF ¶ 33 discusses Sergeant Sloan's testimony that Plaintiff was uncooperative. Plaintiff's dispute asserts this fact to be untrue, citing to Mr. DeFoe's deposition testimony that Plaintiff's "pain response" was the cause of any lack of cooperation. Pl.'s Resp. SUMF ¶ 33. But Mr. DeFoe's cited testimony does not support the proposition that the delay in handcuffing was caused by Investigator Vaillancourt's actions. Rather, Mr. DeFoe testified that *if* someone were to contend Plaintiff were resisting, that his response would be Plaintiff was resisting due to pain associated with the application of the handcuffs to the left wrist during a control hold by Investigator Vaillancourt. *See* DeFoe Dep. at 17:2–13, Defs.' Reply Ex. K. Plaintiff's assertion that he was not uncooperative in allowing Investigator Vaillancourt to take control of his left arm before the use of allegedly excessive force is baseless.

And Plaintiff's dispute to SUMF ¶ 39, which merely states "Sergeant Sloan did not touch Plaintiff's left arm" is likewise not genuine. Plaintiff readily admits "While Sloan may not have touched the left arm . . ." Pl.'s Resp. SUMF ¶ 39. Yet Plaintiff includes a discussion of Sergeant Sloan's overall participation in the restraint of Plaintiff. This is not a genuine dispute of SUMF ¶ 39.

This leaves SUMF ¶ 56, in which Plaintiff attempts to counter his own expert's testimony. Plaintiff's contention is not supported by the testimony he cites, and immediately after the cited proposition, Mr. DeFoe testified to the opposite. He was asked, "Is it your testimony that the officers in this circumstance were required to use de-escalation techniques?" DeFoe Dep. at 122:16–21, Ex. K. His response: "it is not a policy, it's not a sh[a]ll" . . ." *Id.*

**II.     Investigator Vaillancourt and Sergeant Sloan are Entitled Qualified Immunity as to Plaintiff's Claim for Excessive Force in Violation of the Fourth Amendment Under 42 U.S.C. § 1983 (Count IV).**

**A.     No Excessive Force Used.**

Plaintiff concedes that the officers were authorized to detain him in handcuffs. *See* Pl.'s Opp'n at 5 ("[O]fficers executing a search warrant at a home may briefly detain a non-target occupant and use handcuffs when they do. True."). The force used by officers was not excessive: for Investigator Vaillancourt, the application of a hand control technique to secure Plaintiff's left arm in the handcuffs, SUMF ¶ 14–18, 26–27, 30, 35, and for Sergeant Sloan, the restraint of Plaintiff's right arm, SUMF ¶ 13, 32, 34, 39, 40. In *Johnson v. District of Columbia*, the D.C. Circuit noted "the question is whether the specific police behavior at issue . . . produces some law enforcement benefit that might outweigh the serious harm it causes." 528 F.3d 969, 975 (D.C. Cir. 2008) (citing *Delaware v. Prouse,* 440 U.S. 648, 659 (1979)).

The record demonstrates Plaintiff was not "compliant," "subdued," nor "controlled" before the alleged injury. *Contra* Pl.'s Opp'n at 1–2. Nor did he act in a purely submissive fashion, as Plaintiff contends. *Contra id.*, at 2, 5, and 7. These contentions are contradicted by the BWC footage. And although Plaintiff attempts to distinguish *Scott v. Harris*, 550 U.S. 372, 378–79 (2007), this is not a case where BWC footage "fails to cover a substantial portion of the encounter." *Cooper v. District of Columbia*, 548 F. Supp. 3d 170, 179 (D.D.C. 2021). *Hall*

4

similarly relied on conflicting testimony. *Hall v. District of Columbia*, 867 F.3d 138, 159 (D.C. Cir. 2017). But here, the BWC footage captured the encounter from multiple angles, including from the front, side, and back. *See* Defs.' SUMF Exs. F–I [40-9, 40-10, 40-11, 40-12] (filed under seal).

*Hall* involved *no* allegation of any security threat, as *Hall* concerned the detention of a patron who questioned her bill and left the premises. 867 F.3d at 144. But here, some degree of security threat was present during the execution of a search warrant that involved the search for a firearm. SUMF ¶ 34. Plaintiff has alleged no claims of being dragged or slammed against the wall, as was present in *Hall*. 867 F.3d at 157.

Plaintiff contends that there was no immediate threat to officer safety, Pl.'s Opp'n at 8, but at least one other officer instructed Plaintiff to stay where he was and keep his hands up. SUMF ¶ 7. Even assuming for the sake of argument, that the threat was not initially apparent to other officers upon entry, the threat must be assessed from the standpoint of a reasonable officer in Sergeant Sloan and Investigator Vaillancourt's positions. Plaintiff did not calmly agree to be placed in handcuffs, as Plaintiff's Opposition suggests. SUMF ¶ 9–12. Contrary to Plaintiff's contention, in the moments leading up to Investigator Vaillancourt's use of force, Investigator Vaillancourt did not have a "firm grip" on Plaintiff's wrist, Pl.'s Opp'n at 8. SUMF ¶¶ 14, 15, 26.

Here, Plaintiff's left arm was not in handcuffs at the time the allegedly excessive force was used. And Plaintiff resisted Investigator Vaillancourt's attempts to do so, SUMF ¶ 14–15, 25–26, 33, unlike in *DeGraff v. District of Columbia*, 120 F.3d at 302 (D.C. 1997). The particular purpose for which force was employed on the left arm by Investigator Vaillancourt was solely to secure Plaintiff in handcuffs to secure the scene during the execution of a search

warrant. SUMF ¶ 27. The individual defendants did not use force after the handcuffs were applied, SUMF ¶¶ 30, 35, contrary to the facts alleged in *Hall*, 867 F.3d at 157. Plaintiff's position relies heavily on the severity of injury, which is not, by itself, dispositive. *Mwimanzi v. Wilson*, 590 F. Supp. 3d 231, 256 (D.D.C. 2022) (citing *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 22 (D.D.C. 2011).

Plaintiff cannot hold Sergeant Sloan liable under 42 U.S.C. § 1983 for the alleged actions of Investigator Vaillancourt. He "must [establish] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Sergeant Sloan restrained Plaintiff's right arm. SUMF ¶ 13. There is no dispute—whether by video or through testimony—that only Investigator Vaillancourt touched Plaintiff's left arm. SUMF ¶ 39; Pl.'s Resp. SUMF ¶ 39 ("While Sloan may not have touched the left arm, he actively participated in the joint restraint of Plaintiff by securing his right arm while Investigator Vaillancourt applied the unreasonable and injury-causing force to the left arm . . . ."). As in *Dormu*, Plaintiff has not provided any evidence to suggest that Sergeant Sloan was involved in the application of the handcuff to the injured arm. *Dormu*, 795 F. Supp. 2d at 23. Plaintiff's right arm was unharmed. Even Plaintiff's designated expert agrees the force used against Plaintiff's right arm was not excessive. SUMF ¶ 60.

Plaintiff's reliance on *Jackson v. District of Columbia* is misplaced. 83 F. Supp. 3d 158, 170 (D.D.C. 2015). *Jackson* does not, as Plaintiff contends, support the continued participation of Sergeant Sloan in this case based solely on his participation in the restraint of Plaintiff's right arm at the time of the alleged use of excessive force on Plaintiff's left arm. *See* Pl.'s Opp'n at 15 [43]. In *Jackson*, unlike here, there was a factual dispute on summary judgment as to whether the officer was involved with applying force to the plaintiff's broken arm. *See* SUMF ¶ 39; Pl.'s

Resp. SUMF ¶ 39. And in *Jackson*, while the Plaintiff had originally testified the assisting officer was not involved in restraining him, he disputed this fact at summary judgment. *Jackson*, 83 F. Supp. 3d at 169. And both defendants "each testified that they pulled on Plaintiff's left arm and that they were both holding on to Plaintiff's left arm when they felt it break." *Jackson*, 83 F. Supp. 3d at 169. The court therefore found a dispute of material fact and declined to award summary judgment to the second defendant. *Id.*

Here, where the degree of force used was employed solely to the degree necessary to effectuate the handcuffing, the force used was not so excessive as to violate the Fourth Amendment.

### B.     Qualified Immunity.

The officers are entitled to qualified immunity on Plaintiff's Fourth Amendment claim, as neither violated clearly established law in their particular use of force to effectuate this lawful purpose. And any legal precedent relied on by Plaintiff "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012)). The question is not whether another officer may have made a different decision, "the proper inquiry here is whether the officers' actions were so excessive that no reasonable officer on the scene could have believed that they were lawful." *Scott v. District of Columbia*, 101 F.3d 748, 760 (D.C. Cir. 1996).

Here, as discussed above, the individual officers' actions were not so excessive that a reasonable officer on the scene could not have believed in the lawfulness of their actions. *Jackson* is particularly instructive. There the Court found qualified immunity, reasoning:

> As the other factors considered by the Court suggest that the officers had a reasonable concern about escape and executed a reasonable

> maneuver for subduing an individual—even an individual who is not resisting as Plaintiff claims he was not—the Court finds that the officers could have reasonably believed in the lawfulness of their actions even though Plaintiff's arm was broken.

*Jackson*, 83 F. Supp. 3d at 171. So too here, where an officer could have reasonably believed in the lawfulness of executing a hand control maneuver to bring about handcuffing.

In particular, Sergeant Sloan's actions viewed in isolation clearly did not violate the Fourth Amendment, and even if he did, his actions are shielded by qualified immunity. Sergeant Sloan's conduct—in holding a Plaintiff while another officer attempted to place handcuffs on another arm—did not violate clearly established law nor should Sergeant Sloan have known that his conduct would have violated law. Here, Plaintiff improperly attempts to attribute to Sergeant Sloan the District's answers in discovery before Sergeant Sloan was a defendant. *See* Pl.'s Opp'n at 14 [43] ("Mr. Bowrin amended his complaint to add Vaillancourt and Sloan because the District highlighted Sloan's involvement."). But Sergeant Sloan's immunity is based on his conduct alone. Here, both defendants are entitled to qualified immunity as to Plaintiff's Fourth Amendment claims.

**III.    Defendants' Qualified Privilege Bars Plaintiff's Battery Claim.**

As with qualified immunity, the officers are entitled to a qualified privilege as to the battery claim. Plaintiff attempts to defeat Investigator Vaillancourt's subjective, good faith belief, *see* SUMF ¶¶ 17, 29–30, through (1) questioning his credibility, and (2) attacking his character through reliance on other alleged instances of misconduct unconnected to the incident at hand. Plaintiff's goal is clear: to establish Investigator Vaillancourt's propensity to commit acts of police misconduct. This evidence is inadmissible for this purpose under Fed. R. Evid. 404(b)(1).

Plaintiff does not offer specific argument against Sergeant Sloan's claim of privilege for his actions, instead relying on the qualified immunity analysis. *See* Pl.'s Opp'n 18–22. But as with qualified immunity, Sergeant Sloan's actions should be judged in isolation from Investigator Vaillancourt's. Plaintiff does not dispute that the battery alleged is solely to Plaintiff's left arm, not his right. *See* SUMF ¶ 37, Pl.'s Resp. SUMF ¶ 37 ("Admitted"). And Plaintiff does not dispute that Sergeant Sloan held a good faith belief that his actions were reasonable. *See* Pl.'s Resp. SUMF ¶ 40. Objectively, Sergeant Sloan's used "a reasonable, rather than an excessive, amount of force in the circumstances," *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 90–91 (D.D.C. 2015), when he merely held Plaintiff's right arm in a handcuff while Investigator Vaillancourt attempted to place a handcuff on the other arm, SUMF ¶ 39, and his actions are therefore privileged. This minimal use of force was reasonably believed as necessary to accomplish the handcuffing of Plaintiff, and therefore, Sergeant Sloan's actions were privileged, and he cannot be held liable for battery against Plaintiff.

As both individual defendants' actions were privileged, the District is not liable under a *respondeat superior* theory of liability and judgment should be awarded in favor of all defendants as to this claim.

## IV.     Plaintiff's Negligence Claim Fails.

Defendants have not brushed aside the Court's ruling on their motions to dismiss Plaintiff's claims. Rather, Defendants have applied the Court's ruling to the fully developed record. In so doing, Plaintiff's failure to establish an applicable national standard of care beyond the "duty not to use excessive force" is evident.

**A.**    **<u>Plaintiff Has Failed to Set Forth the Applicable National Standard of Care to Show that the District Breached a Duty Owed to Plaintiff.</u>**

Plaintiff's failure to elicit expert testimony of a *distinct* standard of care, beyond the use of excessive force itself, requires dismissal of his negligence claims. Under *District of Columbia v. Chinn*, 839 A.2d 701, 711 (D.C. 2003), "[i]t is tautological to speak of the applicable standard of care as being the duty not to use excessive force; that is the precise boundary line of the privilege itself, and it matters not whether it is exceeded because of the deliberate intention of the officer or through a mistake as to the limit of objectively reasonable allowable force."

Plaintiff's failure to establish the applicable national standard of care by which the officers' actions may be adjudicated is clear in his conclusory discussion of the purported standard of care in the *negative*: he contends that "Mr. DeFoe testified that Investigator Vaillancourt breached a distinct standard of care by executing the handcuffing in a mechanically improper manner;" Pl.'s Opp'n at 23; and he contends the officers used "improper entry tactics," *id*. at 24. Plaintiff contends that Mr. DeFoe set forth the standard of "[o]bjective reasonableness, Pl.'s Resp. SUMF ¶ 42; but this is not an applicable standard of care by which officers' allegedly *negligent* actions may be adjudicated in a particular circumstance. *See Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009).

Plaintiff attempts to resurrect his expert, asserting "the standard of care he applied was consistent with the specific practices and policies" of named departments. Pl.'s Opp'n at 24–25 (citing DeFoe Dep. at 112:21–113:9). But the cited proposition generically discusses that "MPD policy" is consistent with the identified jurisdictions "because all of them are *based on* the objective reasonable standard." DeFoe Dep. at 112:21–113:9, Ex. K. In no way does Mr. DeFoe establish that a particular course of conduct is required by any national standard, based on comparison to these jurisdictions. Furthermore, as Mr. DeFoe testified, he is referring solely to

10

the "objective reasonableness standard," and *none* of these jurisdictions are contained in his report. *Id*. at 113:10–17. *See also* Scott DeFoe Report, Defs.' SUMF Ex. E [40-8 at 5]. Plaintiff's expert's non-specific laundry list of previously undisclosed bodies that establish this generic so-called "universal standard of care" without specificity as to how an officer is required to comport himself in a particular circumstance does not satisfy the *Peters* requirements. *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987). Furthermore, Plaintiff's argument that these other departments are "comparable" is not supported by evidence. *See* Pl.'s Opp'n at 25. And a passing reference to publications is "insufficient when no specific standard was identified." *Pannell v. District of Columbia*, 829 A.2d 474, 480 (D.C. 2003).

Rather, "objective reasonableness" guides judicial determinations of whether force used was *excessive*. As discussed in Defendants' brief, Plaintiff's expert merely identifies a duty not to use excessive force, contrary to established law to sustain a negligence claim. *Chinn*, 839 A.2d at 707 ("What is required to justify such an instruction is at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest . . . .").

Contrast the *Peters* standard (requirement to offer specified type of training to handle a particular circumstance) with the standard offered by Plaintiff's expert: a non-specific "objective reasonableness" standard borrowed from caselaw on the use of excessive force under § 1983. In *Peters*, the Court of Appeals found no abuse of discretion when the trial judge never expressly ruled on the defendant's motion to strike testimony. *Peters*, 527 A.2d at 1273. There, the expert testified that "police departments throughout the country commonly instruct officers on certain procedures to use in handling mentally ill people and persons under the influence of drugs." *Id.* The expert testified that he knew of none, other than the defendant, that failed to offer any such

11

training, and identified specific jurisdictions that provided the training. *Id*. But here, Plaintiff's

expert repeatedly reverted to the only "national standard" he could supply: the same one found in

*Graham* caselaw.

This is not enough to sustain a negligence claim under common law, where the expert

"must clearly articulate and refer to a standard of care by which the defendant's actions can be

measured." *Blair v. District of Columbia*, 190 A.3d 212, 203 (D.C. 2018). Absent a clear

standard, any deviation cannot be measured. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.

1988). Here, expert testimony as to the applicable national standard of care is required. *Tillman*

*v. WMATA*, 695 A. 2d 94, 97 (D.C. 1997) (requiring expert testimony in case involving proper

handcuffing techniques); *Holder v. District of Columbia*, 700 A.2d at 741–742 (stating that

police use of force is an issue beyond the ken of the average jury). As Plaintiff has not

established the standard, his negligence claims fail.

## V.    **Plaintiff's Count III (Negligent Training) Fails.**

### A.    **Plaintiff Cannot Amend His Complaint To Add a Negligent Supervision Claim Through an Opposition Filing.**

Plaintiff cannot amend his Complaint through his Opposition filing. "[A] party cannot

amend a complaint through an opposition filing . . . ." *See Patrick v. District of Columbia*, 179 F.

Supp.3d 82, 89 (D.D.C. 2016) (citing *Robinson v. Deutsche Bank Nat'l Tr. Co.*, 932 F.Supp.2d

95, 105 (D.D.C. 2013)). *See also* Fed. R. Civ. P. 7(b) ("A request for a court order must be made

by motion.").

Plaintiff's operative Complaint asserts a "Negligent Training" claim under Count III. *See*

Pl.'s Compl. at 1 and 5 [1-1 at 60, 64]. Plaintiff apparently now seeks to assert liability for a

negligent supervision claim as well, *see* Pl.'s Opp'n at 25. Though unclear in Plaintiff's

Opposition, Plaintiff may also seek to assert this claim against a new defendant: Sergeant Sloan.

*See* Pl.'s Opp'n at 26 (discussing Sergeant Sloan as the "supervising officer"). But Plaintiff's

Count III was asserted against only the District. *See* Am. Compl. [1-1 at 64]. Plaintiff cannot

amend his Complaint through his opposition filing to add a new theory of liability or a new

defendant to his Count III, and Plaintiff's contentions regarding his negligent supervision claim

should be disregarded by the Court.

      **B.**      **<u>Plaintiff's Negligent Training Claim Fails Because Plaintiff Cannot Show Investigator Vaillancourt or Sergeant Sloan Behaved in a Dangerous or Otherwise Incompetent Manner, and the District Thereafter Failed to Train These Employees.</u>**

To sustain a claim for negligent training and supervision, a plaintiff must prove: (1) "that

the employer knew or should have known its employee behaved in a dangerous or otherwise

incompetent manner," and (2) "that the employer, armed with that actual or constructive

knowledge failed to adequately supervise [or train] the employee." *Blair*, 190 A.3d at 229.

Plaintiff's attempt to establish that Investigator Vaillancourt and Sergeant Sloan behaved

in a dangerous or incompetent manner relies on (1) Investigator Vaillancourt's prior Office of

Police Complaints alone. *See* Pl.'s Opp'n at 25–26. Plaintiff offers no prior knowledge of

Sergeant Sloan's incompetence, other than a brief discussion elsewhere in his brief regarding a

photograph in which both individuals appeared.

Plaintiff offers no discussion or evidence, however, as to what followed the District's

actions once supposedly armed with this knowledge. *See* Pl.'s Opp'n at 25–26. Rather, Plaintiff

seeks to allow the Court and, presumably a jury, to infer the negative: that these individuals were

not trained afterward because the incident occurred as it did. SUMF ¶ 55. Plaintiff cannot sustain

a negligent training claim in this manner.

### C.       Plaintiff's Expert Rendered His Training Opinion Based on the Incident as it Occurred Alone and Failed to Establish A National Standard of Care.

Plaintiff's Opposition offers no meaningful defense of his expert's lack of testimony as to the purported negligence of the training actually conducted by the District. *See* SUMF ¶ 55 (Mr. DeFoe testified he was "not purporting that there was a failure by MPD to train the officers."). Plaintiff only attempts to establish a failure to "assess and train," *see* Pl.'s Resp. SUMF ¶ 55. But, Mr. DeFoe's opinion was based *solely* on the actions of Investigator Vaillancourt and Sergeant Sloan on the day in question. *See* DeFoe Dep. at 178:10–11; 178:22–179:2, Defs.' SUMF Ex. J [40-13]. Mr. DeFoe's opinion and testimony boils down to the following: "if they were properly trained, they would have used proper tactics." *Id*. at 179:3–8. His conclusory opinion is insufficient, where "the record contains no elaboration as to what the national standard requires for training . . . or how the District's actions were deficient." *Blair*, 190 A.3d at 230. Plaintiff cannot rely solely on the officer's actions of the day to satisfy this claim.

Furthermore, Plaintiff's focus on Investigator Vaillancourt's purported history, absent any information or discussion as to the training received before or after any of these incidents, cannot form the basis of his negligent training claim. In so doing, Plaintiff oversimplifies the contours of a negligent training claim, which requires proof that the employer did not adequately train the employee. Because Plaintiff did not do so, his negligent training claim fails.

### CONCLUSION

For these reasons, and the reasons stated in Defendants' motion, the Court should grant the motion and enter summary judgment for Defendants.

Date:  April 24, 2026                                      Respectfully submitted,

                                                                       BRIAN L. SCHWALB
                                                                       Attorney General for the District of Columbia

14

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ George Eppsteiner/sc*
GEORGE EPPSTEINER [90036366]
Chief, Section I
Civil Litigation Division

*/s/ Jessica Krupke*
JESSICA KRUPKE [1019967]
Assistant Attorney General
Civil Litigation Division, Section I
400 6th Street, NW
Washington, D.C. 20001
(202) 805-7562
jessica.krupke@dc.gov

***Counsel for Defendants District of Columbia,
Investigator Michael Vaillancourt, and Retired
Sergeant Curtis Sloan***

15